**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **ROOF MAXX TECHNOLOGIES, LLC,** | : | |
| | : | **Case No. 2:20-cv-03151** |
| **Plaintiff,** | : | |
| | : | **CHIEF JUDGE ALGENON L. MARBLEY** |
| **v.** | : | |
| | : | **Magistrate Judge Chelsea M. Vascura** |
| **CYNTHIA ROURK, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## OPINION & ORDER

## I. INTRODUCTION

This matter is before the Court on a Partial Motion to Dismiss by Plaintiff and Counterclaim Defendant Roof Maxx Technologies, LLC ("Roof Maxx") and Third-Party Defendants Michael Feazel and Todd Feazel (the "Feazels") (collectively, the "Roof Maxx Litigants"). (ECF No. 22). The Roof Maxx Litigants move to dismiss Counts I, II, V, and VI of the Counterclaim and Third-Party Complaint, which was brought by Defendants and Counterclaim Plaintiffs Roof Savers, LLC ("Roof Savers") and Cynthia Rourk (collectively, the "Roof Savers Litigants"). (ECF No. 11). For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Roof Maxx Litigants' motion.

## II. BACKGROUND

### A. The Complaint

Roof Maxx describes itself as an Ohio limited liability company and national distributor of a soy-based liquid product that is sprayed on asphalt shingle roofs to extend the life of the shingles (the "Product"). (Compl. ¶¶ 1, 10, ECF No. 4). Roof Maxx enters into agreements with

1

dealers across the country, who then typically become exclusive dealers of the Product for a specific geographic region. (*Id.* ¶ 11).

On February 6, 2019, Roof Maxx entered into an agreement with Cynthia Rourk and her business, Roof Savers, (the "Exclusive Dealership Agreement" or "February 2019 Agreement"). (*Id.* ¶ 11). Roof Savers is a South Carolina limited liability company that contracted with Roof Maxx to sell the Product in the Southeast region of the United States. (ECF No. 4, Ex. 1). The Exclusive Dealership Agreement's initial term was one year, and it provided for automatic renewal for successive one-year terms, unless the agreement was terminated. The Agreement also contained a covenant not to compete, which prohibited Roof Savers from conducting business competitive to Roof Maxx "for a period of five (5) years from and after the termination of [the] Agreement . . ." (ECF No. 4 ¶ 16). Additionally, on August 10, 2019, Roof Maxx presented to Roof Savers and Ms. Rourk a new Exclusive Dealership Agreement ("August 2019 Agreement"). (ECF No. 11, Ex. 4). The new agreement contained additional obligations and restrictions. (ECF No. 11 ¶¶ 59–60).

Roof Savers sent Roof Maxx a letter on May 1, 2020, giving notice of their termination of the August 2019 Agreement (the "Termination Letter"). (ECF No. 4, Ex. 2). In the Termination Letter, Roof Savers explained it was rescinding the agreement due to alleged misrepresentations by Roof Maxx. (*Id.*). Roof Maxx responded to the Termination Letter on May 4, 2020, denying the alleged misrepresentations, and arguing that the agreement and its covenant not to compete remained in effect. (ECF No. 4 ¶ 22).

On May 21, 2021, Roof Maxx filed a lawsuit against Ms. Rourk and Roof Savers in the Franklin County Court of Common Pleas. (ECF No. 1-1). Roof Maxx alleged a single claim, seeking declaratory judgment on the enforceability of the February 2019 Agreement and its

covenant not to compete. (ECF No. 4 ¶ 32). The Roof Savers Litigants removed the case to the Southern District of Ohio on June 22, 2020. (ECF No. 1).

### B. The Counterclaim and Third-Party Complaint

After the case was removed, the Roof Savers Litigants then answered the Complaint and filed Counterclaim and a Third-Party Complaint against Roof Maxx and its owners, Michael Feazel and Todd Feazel, on July 28, 2020. (ECF No. 11). In the Third-Party Complaint and Counterclaim, Roof Savers allege the following: fraudulent inducement or misrepresentation against Roof Maxx and Michael D. Feazel (Count One); breach of contract against Roof Maxx (Count Two); promissory estoppel against Roof Maxx (Count Three); declaratory judgment regarding the enforceability and applicability of the Exclusive Dealership Agreement against Roof Maxx (Count Four); false advertising under the Lanham Act, 15 U.S.C. § 1125(A) against Roof Maxx and the Feazels (Count Five); and violation of the Ohio Deceptive Trade Practices Act, Ohio Rev. Code § 4165.02 ("ODTPA") against Roof Maxx and the Feazels (Count Six).

According to Roof Savers, the Roof Maxx Litigants enticed Ms. Rourk to sign the Exclusive Dealership Agreement by falsely representing that two generations of the Product were patented. (Countercl. ¶¶ 1–2, ECF No. 11). Roof Savers submits that the Roof Maxx Litigants knew the patent lapsed in December of 2014 due to their failure to pay the patent maintenance fees. (*Id.* ¶¶ 2, 18–23). Ms. Rourk learned of the misrepresentations in early 2020. (*Id.* ¶ 57).

Around the same time, the Roof Savers Litigants allege that the Roof Maxx "started imposing system-wide operational directives upon dealers that fundamentally changed the relationship between the parties, in contravention of their written agreements." (*Id.* ¶ 62). The directives ordered Roof Savers to take down its website and convert to a microsite, to set up auto-purchases and auto-billing, and to agree to a new strict payment plan. (*Id.* ¶¶ 63–64). Roof Maxx

imposed an automatic fine policy for any deal that did not comply. (*Id.*). Roof Maxx also "threatened to take away Roof Savers' territories and give them to another dealer if Roof Savers did not agree to the new payment plan." (*Id.* ¶ 64). Roof Savers alleges that the purpose of the new payment plan was to force out some dealers so that Roof Maxx could resell their territories. (*Id.*). According to Roof Savers, Roof Maxx's misrepresentations and its attempt to impose additional material obligations caused Roof Savers to terminate and rescind the agreement. (*Id.* ¶ 67). The parties were engaged in confidential negotiations when Roof Maxx filed its Complaint without notice.

On October 5, 2020, the Roof Maxx Litigants filed a partial motion to dismiss Counts One, Two, Five, and Six of Roof Savers' Counterclaim and Third-Party Complaint. (ECF No. 22). This motion is now fully briefed and ripe for review.

### III. STANDARD OF REVIEW

Under Rule 12 of the Federal Rules of Civil Procedure, a party may move to dismiss any count of a complaint due to the opponent's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A "motion to dismiss for failure to state a claim is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F. 3d 950, 958–59 (6th Cir. 2005). Consequently, the Court must construe the complaint in the light most favorable to the non-moving party, accept all factual allegations as true, and make reasonable inferences in favor of the non-moving party. *Scooter Store, Inc. v. SpinLife.com, LLC*, 777 F. Supp. 2d 1102, 1109 (S.D. Ohio 2011) (citing *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008)). The Court is not required, however, to accept as true mere legal conclusions that are

4

not supported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Accordingly, although liberal, the Rule 12(b)(6) standard requires more than the bare assertion of legal conclusions to survive a motion to dismiss. *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted). The complaint must "give the defendant fair notice of what the claim is, and the grounds upon which it rests." *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). While a complaint need not contain "detailed factual allegations," its "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545. A complaint that suggests "the mere possibility of misconduct" is insufficient because the complaint must state "a plausible claim for relief." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).

When a plaintiff's claim sounds in fraud, the plaintiff must also satisfy Federal Rule of Civil Procedure 9(b) to survive a motion to dismiss. Rule 9(b) requires that, "in any complaint averring fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003) (quoting Fed. R. Civ. P. 9(b)). The requirement "reflects the rulemakers' additional understanding that, in cases involving fraud and mistake, a more specific form of notice is necessary to permit a defendant to draft a responsive pleading." *In re EveryWare Global, Inc. Sec. Litig.*, 175 F. Supp. 3d 837, 849 (S.D. Ohio 2016) (quoting *United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008) (internal quotation marks omitted)). In the analysis that follows, the Court will specify which claims sound in fraud and therefore must satisfy the more stringent requirements of Rule 9(b).

## IV. LAW & ANALYSIS

### A. Fraudulent Inducement or Misrepresentation (Count One)

As required by Federal Rule of Civil Procedure 12(c), the Court accepts as true the factual allegations set forth in the pleadings at issue here: the Roof Savers Litigants' Counterclaim and Third-Party Complaint. With respect to their claim of fraudulent inducement or misrepresentation, the Roof Savers Litigants allege that Roof Maxx and Michael Feazel knowingly and falsely told Roof Savers that the Product was subject to an active, valid patent. Roof Savers' claim of fraudulent inducement or misrepresentation is subject to the heightened particularity pleading standard of Rule 9(b).

The Roof Maxx Litigants argue that Roof Savers' fraud claim should be dismissed because it fails to meet the Rule 9(b) requirements. Alternatively, Roof Maxx argues that the claim fails because the Roof Savers Litigants did not adequately allege that they justifiably relied on an alleged misrepresentation.

### 1. Rule 9(b) Pleading Requirements

To satisfy Rule 9(b), a plaintiff must, at minimum, "allege the time, place, and content of the alleged misrepresentation" as well as "the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Bennet v. MIS Corp.*, 607 F.3d 1076, 1100 (6th Cir. 2010) (internal citations omitted). Plaintiffs may plead fraud based on "information and belief," but the complaint "must set forth a factual basis for such belief, and the allowance of this exception must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 878 (6th Cir. 2006) (internal quotations omitted).

At the same time, Rule 9 of the Federal Rules of Civil Procedure "is to be read in conjunction with Rule 8(a)." *Lambert v. Kazinetz*, 250 F. Supp. 2d 908, 915 (S.D. Ohio 2013) (citing *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F. Supp. 2d 674, 679 (6th Cir. 1988) (noting that Rule 9's particularity requirement must be read in harmony with Rule 8's "simplicity of pleading")). This is because "it is inappropriate to focus exclusively on the fact that Rule 9(b) requires particularity in pleading fraud." *Michael Bldg. Co.*, 848 F.2d at 679. Such a view is "too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules." *Id.* Rather, the purpose of Rule 9(b)'s particularity requirement is "to provide a defendant fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading." *Id.* As such, "[t]he threshold test is whether the complaint places the defendant on sufficient notice of the misrepresentation, allowing the defendant to answer, addressing in an informed way plaintiffs [sic] claim of fraud." *Lambert*, 250 F. Supp. 2d at 915 internal quotations omitted) (quoting *Coffey v. Foamex L.P.*, 2 F.3d 157 (6th Cir. 1993)). Roof Maxx contends that Roof Savers has not pled its fraudulent misrepresentation claim with sufficient particularity for several reasons.

To start, the Roof Maxx Litigants argue the Counterclaim is "entirely silent as to an alleged scheme" and makes "only cursory allegations as to intent." (ECF No. 22 at 5). The Counterclaim, however, provides a detailed history of Roof Maxx's failed patent efforts and explains how the Roof Maxx Litigants knowingly designed its marketing materials to mislead individuals like Ms. Rourk into believing the Product was patented and exclusive. (Countercl. ¶¶ 17–23, 43–44, 46). The Counterclaim also alleges that Roof Maxx and Mr. Feazel took these steps with the express intent of locking Ms. Rourk and others into restrictive contracts, preventing them from selling non-Roof Maxx products, and thus increasing Roof Maxx's sales, profits, and dealership network. (*Id.*

¶¶ 47–49, 77). These allegations provide ample notice and specificity of the fraudulent scheme and intent the Roof Maxx Litigants employed to respond in an informed way. Accordingly, Roof Savers has satisfied Rule 9 with respect to its claim of fraudulent inducement or misrepresentation.

Next, the Roof Maxx Litigants claim that Roof Savers makes only "general allegations as to time and place." (ECF No. 22 at 5–6). But the Counterclaim provides detail on the time and place of the alleged misrepresentations. As to place, the Counterclaim provides sufficient notice that the misrepresentations were made in the form of oral communications, in written marketing materials, and on YouTube, Facebook, and Roof Maxx's website. (Countercl. ¶¶ 35–38, 42–43, 73–75, 77, ECF No. 11); *Rikos*, 782 F. Supp. at 537 (allegations that false statements were made on the internet, package labels, and on certain websites gave defendant fair notice). Roof Savers also attached the documents containing the allegedly fraudulent statements to the Counterclaim. (ECF No. 11, Exs. 1, 2); *FRC Int'l v. Taifun Feuerloschgeratebau Und Vertriebs Gmbh*, No. 3:01 CV 7533, 2002 WL 31086104, at *11 (N.D. Ohio Sept. 4, 2002) (attaching exhibits containing the misrepresentations at issue, among other things, was sufficient to plead fraud); *Michaels Bldg. Co.*, 848 F.2d at 679 (denying a motion to dismiss and noting that plaintiffs identified and attached the fraudulent documents).

As to time, Roof Savers alleges that the misrepresentations were made "in the weeks leading up to the parties contracting on February 6, 2019." (Countercl. ¶ 77). Roof Savers is not required to identify the specific date on which each misrepresentation took place where the alleged wrong was ongoing over a period of time, so long as the allegations' details provide sufficient notice as to the time of the misrepresentations. *See Alsbrook v. Concorde Career Colls.*, 469 F. Supp. 3d 805, 844 (W.D. Tenn. 2020) (allegation that the statements were made "[a]fter Plaintiffs graduated" was specific enough to provide notice); *Rikos*, 782 F. Supp. 2d at 537 (allegation that

the statements were made "[i]n March 2009" and were ongoing was sufficiently particular); *Jewell Coke Co., L.P. v. ArcelorMittal USA, Inc.*, 756 F. Supp. 2d 858, 864 (N.D. Ohio 2010) (misrepresentations beginning "in July 2005" and made "throughout late 2005 and 2006" and "between March and May 2008" were sufficient). Because the Counterclaim provides enough detail about the time and place the alleged misrepresentations occurred, the Roof Maxx Litigants have enough notice to respond to the statements in its own documents, and the Rule 9(b) requirement is satisfied.

Finally, the Roof Maxx Litigants contend that Roof Savers has not alleged a sufficiently particular injury. (ECF No. 22 at 6). The Counterclaim describes how the Roof Maxx Litigants' fraudulent misrepresentations caused Roof Savers to lose its initial investment and a subsequent investment, for a total loss of $52,820. (Countercl. ¶¶ 54, 80). Roof Savers also seeks a declaration that its contract with Roof Maxx is void. Additionally, the Counterclaim puts the Roof Maxx Litigants on notice that their misrepresentations caused Roof Savers to suffer injury in the form of lost profits, goodwill, and other business opportunities. (*Id.* ¶¶ 80–81). Although these latter amounts are not yet specific, the parties have not engaged in substantive discovery in this case, and the Roof Savers Litigants cannot quantify the exact amount of these damages without information Roof Maxx possesses. *Ferron v. Metareward, Inc.*, 698 F. Supp. 2d 992, 997, 1001 (S.D. Ohio 2010) ("Rule 9(b) may be relaxed when there has been a lack of discovery and the information needed for a plaintiff to achieve particularity is held exclusively by the opposing party."). *Rikos v. Procter & Gamble Co.*, 782 F. Supp. 522, 537 (S.D. Ohio 2011) (upholding plaintiff's fraud claim even though the "allegations could have been more detailed" because "additional details [were] the appropriate subject of discovery, and this [was] not a case where Defendant [would] be forced to do discovery in the absence of a plausible claim for relief").

9

Indeed, the Sixth Circuit holds that "[i]t is a principle of basic fairness that a plaintiff should have an opportunity to flesh out her claim through evidence overturned in discovery. Rule 9(b) does not require omniscience . . ." *Michaels Bldg. Co.*, 848 F.2d at 680. Instead, the Rule requires that the allegations are specific enough to put defendants on notice as to the nature of the claim. *Id.* Here, Roof Savers has met this requirement.

Accordingly, this Court finds that the Roof Savers Litigants' claim of fraudulent inducement or misrepresentation meets the heightened pleading requirements of Rule 9(b) with respect to both Roof Maxx and Michael D. Feazel.

## 2. Justifiable Reliance

Under Ohio law, a claim of fraudulent inducement or misrepresentation requires a plaintiff to allege: (1) a representation, or a concealment of fact where there is a duty to disclose; (2) that is material to the transaction at issue; (3) made falsely, either with knowledge or with utter disregard to its truthfulness; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance on the representation or concealment; and (6) an injury proximately caused by the reliance. *Stuckey v. Online Res. Corp.*, 819 F. Supp. 2d 673, 682 (S.D. Ohio 2011). Roof Maxx argues that Roof Savers has not established the fifth element, justifiable reliance.

The issue of justifiable reliance "is one of fact and requires an inquiry into the relationship between the parties." *Pacifica Loan Five, LLC v. Fifth Third Bank*, No. 1:09-cv-930, 2011 WL 13228111, at *8 (S.D. Ohio Apr. 14, 2011) (citing *Leal v. Holtvogt*, 702 N.E.2d 1246, 1263 (Ohio Ct. App. 1998)). Reliance might be justified when "the representation does not appear unreasonable on its face, and if, under the circumstances, the [plaintiff] had no reason to doubt the veracity of the representation." *Id.* (citing *Lepera v. Fuson*, 613 N.E.2d 1060, 1065–66 (Ohio Ct. App. 1992) (internal citations omitted)). Courts consider various circumstances involved in the

transaction, such as "the nature of the transaction, the form and materiality of the representation, the relationship of the parties," and the respective experience and savviness of the parties. *See W.D.I.A. Corp. v. McGraw-Hill Inc.*, 34 F. Supp. 2d 612, 626 (S.D. Ohio 1998) (quoting *Finomore v. Epstein*, 18 Ohio App. 3d 88, 90, 481 N.E.2d 1193, 1196 (1984)).

Here, the circumstances involved in the agreement show that Ms. Rourk had no reason to doubt the veracity of Roof Maxx's representation that the Product was subject to a valid patent. The Feazels have a long history of starting roofing companies, and Roof Maxx (his most recent roofing company) is a national distributor of roofing products. Ms. Rourk, on the other hand, is a layperson with no previous experience in the roofing industry. Indeed, Roof Savers alleges that Roof Maxx and the Feazels specifically targeted individuals with no roofing or business background for the purpose of entering into exclusive dealer agreements. Moreover, the alleged misrepresentations concerned the nature of Roof Maxx's own roofing Product and were presented in official marketing material and conversations. Given Ms. Rourk's relative inexperience and the formality in which the representations were made, it was not unreasonable for Ms. Rourk to trust them and rely upon them when she signed the agreement.

Roof Maxx does not dispute these circumstances, but instead argues that Ms. Rourk could not justifiably rely on the patent statements because patents are a matter of public record. In support, Roof Maxx cites cases from the real estate context and asks the Court to extend their holdings to the facts of this case. *See, e.g., Barna v. Paris*, No. 99-L-084, 2000 WL 1458967, at *6 (Ohio Ct. App. Sept. 29, 2000) (finding that the buyers of real property could not justifiably rely on the sellers' representations about zoning restrictions because they were public record); *see also State Plaza Assocs. v. Hillsboro Assocs.*, No. 96CA898, 1998 WL 394370, at *13 (Ohio Ct. App. June 29, 1998) ("Where any adversities regarding title to property, such as flood plain

11

restrictions, are matters of public record . . . the Plaintiff is not entitled to rely on the alleged concealment of material facts by the Defendant."); *see also United Nat'l Bank & T. Co. v. N. Canton Ctr.*, No. CA 9202, 1993 WL 535503, at *2 (Ohio Ct. App. Dec. 6, 1993).

This Court declines to extend these holdings to the case sub judice. Inapposite to the cases Roof Maxx cites, Ms. Rourk did not enter the agreement to purchase a patented Product and then fail to complete basic due diligence. Instead, the transaction at issue here revolved around forming a dealership relationship, and the patent representations constituted an inducement to enter the dealership agreement. *See W.D.I.A. Corp.*, 34 F. Supp. 2d at 626 (noting that "the nature of the transaction" is a factor to consider in determining justifiable reliance). Under these facts, a person "is under a duty to reasonably investigate" only if she was "put on notice as to any doubt about the truth of representation." *Pacifica Loan Five*, 2011 WL 13228111, at *8. Thus, even if Ms. Rourk could have checked the status of the patent on the USPTO website, she was "not required to investigate unless it was apparent that [she was] being deceived." *Yazdianpour v. Safeblood Techs., Inc.*, 779 F.3d 530, 534–37 (8th Cir. 2015) (holding that there was a disputed issue of material fact as to justifiable reliance, even when plaintiffs had heard rumors of deception and defendants expressly told plaintiffs how to check the USPTO website). There are no facts before the Court that suggest Ms. Rourk should have known she was being deceived, so she was not obligated to verify the patent status by independently checking the USPTO website.

For these reasons, the Court **DENIES** Roof Maxx's motion to dismiss Count One of the Counterclaim and Third-Party Complaint.

### B. Breach of Contract (Count Two)

Roof Savers asserts two primary bases for its breach of contract claim against Roof Maxx, both of which pertain to the August 2019 Agreement. First, Roof Savers asserts that Roof Maxx

breached the agreement by failing to act in good faith when it issued unfair operational directives on topics on which the agreement was silent. Second, Roof Savers asserts that Roof Maxx violated Section 8.11 of the August 2019 Agreement by publishing disparaging remarks about Roof Savers.

### 1. Operational Directives

In Ohio, "a party can be found to have breached its contract if it fails to act in good faith." *Eggert Agency , Inc. v. NA Mgmt. Corp.*, No. C2-07-1011, 2008 WL 3474148, at *4 (S.D. Ohio Aug. 12, 2008) (quoting *Littlejohn v. Parrish*, 163 Ohio App. 3d 456, 458, 839 N.E.2d 49, 50 (Ohio Ct. App. 2005)). This is because the "duty of good faith [and] fair dealing is an implied term in all contracts." *Id.*

The duty of good faith "requires the parties to deal reasonably with each other, and it applies where one party has discretionary authority to determine certain terms of the contract." *Connectivity Sys., Inc. v. Nat'l City Bank*, No. 2:08-cv-01119, 2009 WL 10709117, at *4 (S.D. Ohio Aug. 20, 2009) (citing *DavCo Acquisition Holding, Inc. v. Wendy's Int'l, Inc.*, No. 2:08-cv-1064, 2008 WL 755283, at *6 (S.D. Ohio Mar. 19, 2008). While the implied covenant of good faith and fair dealing does not apply when one party to a contract has exclusive authority to make the decision at issue, the duty may be applied "where a contract is silent as to an issue, in which case good faith is used to fill the gap." *Id.* (citing *Savedoff v. Access Grp., Inc.*, 524, F.3d 754, 764 (6th Cir. 2008) ("Good faith is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties.").

The agreement at issue in this case is silent on matters such as payment plans, the type of website a dealer may use, auto-billing, and the imposition of fines. (*See* ECF No. 11, Ex. 3). The Counterclaim alleges Roof Maxx subsequently issued operational directives that: (a) imposed a

new and strict payment plan for the Product; (b) required dealers to remove their websites and convert to a microsite, fining those who did not comply; and (c) required dealers to set up an auto-bill system. (Countercl. ¶¶ 63, 86, ECF No. 11). Roof Savers alleges that Roof Maxx took opportunistic advantage of the agreement's silence on these topics to impose strict requirements that the parties did not contract for, in an effort to convert the contract to a franchisor-franchisee relationship. (*Id.* ¶¶ 62, 64). According to Roof Savers, these new requirements frustrated the purpose of the parties' agreement and impaired Roof Savers' ability to do business according to its terms. (*Id.* ¶ 86). Accepting these factual allegations as true, Roof Savers has sufficiently pled a breach of contract claim with respect to the imposition of the new operational directives.

### 2. Disparagement

The Roof Savers Litigants also claim Roof Maxx breached Section 8.11 of the agreement by publishing certain statements. Section 8.11 of the August 2019 Agreement reads:

> <u>Non-disparagement</u>: The parties acknowledge the good-faith of the other party in their commercial efforts in carrying out the terms of this Agreement. As such, any disagreements or criticisms of the other party shall be conducted civilly and professionally between the parties. **The parties jointly agree to not post for public consumption, any disparaging remarks, comments, accounts, or other relationship detail.** Such disagreements shall be first submitted to a licensed Mediator/Arbitrator for informal adjudication. . . . Any violation of this paragraph is a material breach, and breaching party will remove, caused to be removed, or authorize removal, of such offending public statements.

(ECF No. 11, Ex. 4) (emphasis added).

On May 22, 2020, Roof Maxx published the following statements to a group of Roof Maxx Certified Dealers:

> Recently, there have been some questions regarding why certain Roof Maxx dealers terminated their dealerships. Roof Maxx and these dealers have disagreements regarding various practical and legal matters pertaining to those dealerships and their related activities.

14

Roof Maxx and those dealers engaged in good faith attempts to informally resolve these issues. Initial discussions failed to resolve the matter. In the meantime, Roof Maxx has filed lawsuits in Franklin County, Ohio, pursuant to the terms of the respective EDAs, to have these matters adjudicated according to law.

Roof Maxx has filed these actions to preserve the integrity of the industry and brand that all our dedicated dealers have built (and continue to build), as well as ensure that the time, dedication, and resources that you have committed your success to are not diluted . . . .

Roof Maxx respects the legal process and will not comment on or discuss pending litigation.

(Countercl. ¶ 70, ECF No. 11).

Roof Savers argues Roof Maxx violated Section 8.11 by posting these statements to the dealer network because Section 8.11 prohibits Roof Maxx from posting "disparaging remarks, comments, accounts, or other relationship detail." Roof Savers also asserts that, because Roof Maxx stated it filed its lawsuit to "preserve the integrity of the industry and brand," it insinuated that Roof Savers was a threat to such integrity. (ECF No. 30 at 16).

The Court finds that the Counterclaim allegations are not sufficient to support a finding that Roof Maxx breached Section 8.11 of the August 2019 Agreement. The statements Roof Maxx made on May 22, 2020 do not name Roof Savers as one of the dealers subject to termination and the resulting lawsuit. Without specifying Roof Savers as one of the dealers, Roof Maxx could not disclose details about Roof Savers in contravention of the agreement. Thus, Roof Savers cannot sustain their breach of contract claim on this basis.

In sum, the Court **DENIES** Roof Maxx's motion to dismiss with respect to Roof Saver's breach of the implied duty of good faith but **GRANTS** the motion to dismiss with respect to Roof Saver's claim alleging a breach of Section 8.11 of the August 2019 Agreement.

**C. Lanham Act and ODTPA Claims (Counts Five and Six)**

The Roof Savers Litigants have also alleged one count of false advertising under Section 43(a) of the Lanham Act (Count Five) and one count of violating Ohio's correlating statute, the ODTPA (Count Six). Because these two claims are substantially similar, courts in the Southern District of Ohio hold that "an analysis appropriate for a determination of liability under [S]ection 43(a) of the Lanham Act is also appropriate for determining liability under the Ohio Deceptive Trade Practices Act." *Clark v. Walt Disney Co.*, 642 F. Supp. 2d 775, 784–85 (S.D. Ohio 2009) (quoting *Worthington Foods v. Kellogg Co.*, 732 F. Supp. 1417, 1431 (S.D. Ohio 1990)); *see also Corrova v. Tatman*, 2005-Ohio-6877, ¶ 23, 164 Ohio App. 3d 784, 788 (5th Dist.); *Dawson v. Blockbuster, Inc.*, 2006-Ohio-1240, ¶ 23 (8th Dist.). Accordingly, this Court applies the same analysis to both claims.

Section 43(a)(1)(B) of the Lanham Act, in relevant part, provides:

(a)(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . .

(B) in commercial advertising or promotion, **misrepresents the nature, circumstances, qualities or geographic origin of his or her or another person's goods, services or commercial activities**

shall be liable in civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B) (emphasis added).

To allege a commercial advertising violation, the alleged misrepresentations must also meet the following four-prong test:

(1) commercial speech; (2) **by a defendant who is in commercial competition with plaintiff**; (3) for the purpose of influencing consumers to buy defendant's

goods or services. While the representations need not be made in a "classical advertising campaign," but may consist instead of more informal types of "promotion," the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.

*Azko Nobel Surface Chemistry LLC v. Stern*, No. 2:13-cv-00826, 2014 WL 6982674, at *3 (S.D. Ohio Dec. 9, 2014) (emphasis added) (quoting *LidoChem, Inc. v. Stroller Enters.*, 500 F. App'x 373, 379 (6th Cir. 2012)).

Roof Maxx argues that Roof Savers' Lanham Act and ODTPA claims fail because Roof Savers has not alleged any misrepresentations as to the nature, characteristics, or quality of the Product. Alternatively, Roof Maxx argues that the alleged misrepresentations do not meet the statutory requirements because Roof Maxx is not "in commercial competition" with Roof Savers. Roof Maxx also contends that Roof Savers has not sufficiently alleged that the Feazels violated the Lanham Act.

### 1. Nature, Circumstances, Qualities or Geographic Origin

Roof Savers alleges that Roof Maxx represented in the marketplace that they patented the Product and were the first to bring them to the market by authoring and distributing a "Prospective Dealer Guide" ("Guide") to Ms. Rourk and hundreds of other potential dealers. (ECF No. 11 ¶ 35; ECF No. 30 at 16). The Guide represented that "Roof Maxx has worked closely with our strategic partners, Battelle Laboratories and the Ohio Soybean Council to develop an optimal formula . . . . The product formula is patented." (ECF No. 11, Ex. 1 at 9). According to Roof Savers, Roof Maxx also published the following statements in a "Patents Information Document" and made the same representations during a sales pitch:

> In 2016, Roof Maxx entered into a worldwide exclusive licensing agreement with Shingle Life, a Canadian company, for the rights to the patent covering the Roof Maxx product. The original patent was held by Clipper Roof Coatings, Inc.

17

Click <u>HERE</u> to review the patent[1]

> In an effort to continually bring value to our Dealers and their customers (property owners), Roof Maxx has entered into another worldwide exclusive licensing agreement with the Ohio Soybean Council (2018), for a new and improved Roof Maxx formulation. **This formulation is the subject of a separate patent filed in 2017** and is currently in the final phases of testing.

> Provisional Patent Application No. 623/543, 105
> Full Patent Application no. 16/059, 936

> Despite Roof Maxx's best efforts to provide **superior products which are covered by various patents**, the business opportunity should be evaluated on the basis of the underlying value of the Roof Maxx product, Roof Maxx's world-class Onboarding and Success teams and resources, national brand recognition, and the other systems and resources provided to the Dealer as part of the Roof Maxx opportunity.

(ECF No. 11, Ex. 2) (emphases added).

Furthermore, Roof Savers alleges that Roof Maxx and the Feazels knew these representations were false. Specifically, because Roof Maxx petitioned the United States Patent and Trademark Office ("USPTO") to accept a late payment of the maintenance fee and was rejected, they were "keenly aware" that the original patent lapsed at the end of 2014. (ECF No. 11 ¶¶ 39–41). Roof Savers also contends that the Roof Maxx Litigants knew they were being deceptive when they claimed the "new and improved Roof Maxx formulation" was the "subject of a separate patent filed in 2017" because the USPTO rejected the patent application for this second-generation Product numerous times. (*Id.*).

---

[1] The hyperlink included in the Guide directs to the Product's patent on the USPTO's Patent Full-Text and Image Database. The information contained on this website does not indicate that the patent had lapsed or was otherwise invalid.

The Roof Maxx Litigants argue unpersuasively that Roof Savers' counterclaim places the ownership of the Product at issue, but does not raise the "nature, characteristics, qualities, or geographic origin" of the Product, as the Lanham Act requires. Citing the seminal case, *Dastar Corporation v. Twentieth Century Fox Film Corporation*, and its progeny, Roof Maxx asserts that Lanham Act claims are not actionable where they are based on misrepresentations of creation or ownership. (ECF No. 22 at 13). The cases upon which Roof Maxx relies, however, are readily distinguishable from the case sub judice.

As a threshold matter, *Dastar* involved the unaccredited copying of *uncopyrighted* work. 539 U.S. 23, 36–38 (2003). The television series at issue had previously been subject to copyright, but the copyright had expired, and the episodes were part of the public domain. *Id.* at 23. Dastar later edited, relabeled, and marketed the new product as its own creation. *Id.* at 28. The Supreme Court concluded that Fox could not receive damages from Dastar for misrepresenting the "origin" of the new film series because Dastar was the "origin" of the products it sold as its own. *Id.* at 38 (finding that the "origin of goods" phrase in the Lanham Act was "incapable of connoting the person or entity that originated the ideas or communications that 'goods' embody or contain"). *Id.* at 32. Thus, *Dastar* stands for the proposition that the Lanham Act does not protect a company against a rival that "steal[s] its product ideas to manufacture a rival, facsimile product." *Kehoe Component Sales Inc. v. Best Lighting Products, Inc.*, 796 F.3d 576, 589–90 (6th Cir. 2015) (noting that the Lanham Act "does not encompass misrepresentations about the source of the ideas embodied in the object (such as false designation of authorship)"). The *Dastar* facts are quite different from the issue in the case sub judice, which revolves around Roof Maxx's misrepresentations that its Product was subject to an active, valid patent—not around the person or entity who originated the Product's formula.

19

The facts underlying this Court's decision in *Akzo Nobel Surface Chemistry LLC v. Stern* also differ significantly from the facts in the instant case. 2014 WL 6982674, at *1. In *Akzo*, this Court found that a plaintiff could not successfully bring a Lanham Act false advertising claim based solely on the defendants' filing of a patent for chemical additives. *Id.* at *4. The Court found that, by filing the patent, the defendants claimed ownership of the chemical additives, but did not make any representations as to their nature, characteristics, or qualities. *Id.* ("To claim that information contained in a patent application equates to misrepresentation of the details underlying the goods or services is, at best, a stretch."). Here, however, Roof Savers has asserted that Roof Maxx made misrepresentations about the Product by falsely describing that the Product was covered by an active patent on marketing materials and in meetings with prospective dealers— Roof Savers' claim does not center on claims of ownership through the patent application itself.

Indeed, Roof Savers does not raise a false authorship claim, nor does it argue that Roof Maxx infringed on some ownership right Roof Savers has in the same or similar goods. Instead, Roof Savers alleges that Roof Maxx misrepresented that the Product was subject to an active patent, creating a false impression that Roof Maxx was the exclusive source of the Product and that prospective dealers would face little or no direct competition. As such, these statements go directly to the Products' nature, characteristics, and qualities. *See, e.g.*, *Blank v. Pollack*, 916 F. Supp. 165, 172 (S.D.N.Y. 1996) ("In keeping with the broad construction of the language of the [Lanham] Act, the court finds that the misrepresentation [in a brochure] that a product is patented relates to the nature and qualities of the product."); *BPI Sports, LLC v. ThermoLife Internat'l, LLC*, No. 19-60505-CIV, 2020 WL 10180910, at *5–6 (S.D. Fla. Jan. 9, 2020) (denying motion to dismiss Lanham Act claim where, among other things, plaintiff alleged that defendants' website falsely claimed a certain compound fell within the scope of its patents and that defendant was the

20

only legitimate source of the compound). In other words, Section 43(a) of the Lanham Act "does reach a seller who, by exaggerating the scope of a patent, creates a false impression that he is the exclusive source of the product." *Zenith Elec. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1344 (Fed. Cir. 1999) (citation omitted). Since this is precisely what Roof Savers have alleged in the Counterclaim, the Court finds that Roof Savers has adequately pled the misrepresentations involve the "nature, circumstances, and qualities" of the Product.

### 2. Commercial Competition

Roof Maxx also claims that it and Roof Savers are not in "commercial competition," as required by the four-prong test, so Roof Savers cannot allege a discernibly competitive injury. Most cases Roof Maxx cites, however, precede the Supreme Court's decision in *Lexmark International*, *Inc. v. Static Control Components, Inc.* 572 U.S. 118, 140 (2014).[2]

In *Lexmark*, Static Control manufactured and sold components in Lexmark printer cartridges. *Id.* at 122–23. Static Control sued under the Lanham Act, claiming that Lexmark engaged in false advertising by misrepresenting that it was illegal to sell refurbished Lexmark cartridges, which resulted in lost sales and damage to Static Control's business reputation. *Id.* Although the two parties were not direct competitors—they did not sell identical products or provide the same services—the Supreme Court ruled that Static Control was "entitled to a chance

---

[2] Two of the cases that Roof Maxx cites came after *Lexmark*. The first, *Welk Resort Grp., Inc. v. Reed & Hein Assocs., LLC*, No. 3:17-cv-01499-L-AGS, 2019 WL 1242446, at *6 (S.D. Cal. Mar. 18, 2019), fails to cite *Lexmark* at all and instead refers to a Ninth Circuit case that pre-dates *Lexmark* and has been called into question by it. *See Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027 (9th Cir. 2005).

The second, *ThermoLife Internat'l LLC v. Am. Fitness Wholesalers LLC*, No. CV-18-04189-PHS-JAT, 2020 WL 122874, at *7 (D. Ariz. Jan. 10, 2020), diverts from *Lexmark*'s holding. ("To properly plead a Lanham Act claim, a plaintiff mut allege the defendant's false advertising was harmful to the plaintiff's ability to compete with the defendant. Plaintiff and Defendant are not in the same market, and are thus not in competition. Plaintiff's failure to allege a competitive injury is fatal to its Lanham Act claim."). This Court believes that *ThermoLife* misread *Lexmark* and therefore disregards this non-binding authority.

to prove its case" because the alleged injuries fell within the "zone of interests" protected by the statute. *Id.* at 136–38, 140 ("Static Control is suing not as a deceived customer, but as a perso[n] engaged in commerce within the control of Congress whose position in the marketplace has been damaged by Lexmark's false advertising." (internal quotations omitted)). More specifically, the Supreme Court observed:

> [A] plaintiff who does not compete with the defendant will often have a harder time establishing proximate causation. But a rule categorically prohibiting all suits by noncompetitors would read too much into the [Lanham] Act's reference to "unfair competition" in § 1127 . . . . It is thus a mistake to infer that because the Lanham Act treats false advertising as a form of unfair competition, it can protect *only* the false-advertiser's direct competitors.

*Id.* at 136 (emphasis in original).

Courts relying on *Lexmark* have similarly declined to dismiss Lanham Act claims where a party has moved for dismissal because the parties do not directly compete. *See, e.g.*, *Educ. Impact, Inc. v. Danielson*, No. CIVA 14-937 FLW LHG, 2015 WL 38132, at *14 (D.N.J. Jan. 28, 2015) ("Here, although [the defendant] is not in direct competition with [the plaintiff], the claims made on its website, if shown to be false, likely have the effect of limiting [the plaintiff's] sales. Under current law, this allegation is sufficient to state a claim under the Lanham Act."); *Wyndham Vacation Ownership v. Reed Hein & Assocs., LLC*, No. 6:18-cv-02171-GAP-DCI, 2019 WL 3934468, at *5 (M.D. Fla. Aug. 20, 2019) ("Competition is not required to bring a claim under the Lanham Act.").

Here, as Roof Savers pleads damages to its commercial interest in sales and business reputation, it falls within the zone of interests protected by the Lanham Act. Accordingly, this Court will not dismiss Roof Saver's claims against Roof Maxx on this ground. *See Orange Lake Country Club, Inc. v. Reed Hein & Assocs.*, No. 6:17-cv-1542-ORL, 2018 WL 5279135, at *9

(M.D. Fla. Oct. 24, 2018) (declining to dismiss a Lanham Act claim where the defendant submitted the same argument).

### 3. Claims Against the Feazels

Finally, Roof Maxx argues that Roof Savers' statements about the Feazels' individual involvement in the Lanham Act claims do not meet the legal standard or Rule 9(b)'s specificity requirements.

Corporate officers may be held personally liable for Lanham Act violations. *State Farm Mut. Auto. Ins. Co. v. Sharon Woods Collision Ctr., Inc.,* 2007 WL 4207158, at *1 (S.D. Ohio Nov. 26, 2007) (citation omitted). For example, "corporate officers are liable if they personally take part in the infringing activity or direct others to do so." *Simmons v. Cook*, 701 F. Supp. 2d 965, 989–90 (S.D. Ohio 2010) (citing *CCA Global Partners, Inc. v. CarpetMax Flooring Ctr.,* No. 4:02CV-215-M, 2006 WL 581016, at *2 (W.D. Ky. Mar. 6, 2006)); *see also Tri-State Hosp. Supply Corp. v. Medi-Pac*, No. 1:06cv824, 2008 WL 11351556, at *6 n.8 (S.D. Ohio June 2, 2008). Similarly, Ohio courts hold that corporate officers can be held personally liable for violating Ohio Revised Code § 1345.02 if the officer took part in the commission of the act, directed the act to be done, or participated or cooperated. *Sharon Woods Collision Ctr.*, 2007 WL 4207158, at *2. The Counterclaim repeatedly alleges that the Feazels participated in the acts pertaining to false advertising: it describes that the Feazels were aware the Product's patent had lapsed but created marketing materials that advertised the Product as patented and exclusive. As such, Roof Savers has satisfied the legal standard for this claim.

Roof Maxx also submits that Roof Savers has failed to meet allegations with the specificity required under Rule 9(b). The Sixth Circuit, however, has never imposed such a requirement. *See Williamson v. Rexam Beverage Can Co.*, 497 F. Supp. 2d 900, 909 (S.D. Ohio 2007) ("The federal

courts are currently divided as to whether Rule 9(b) should apply to Lanham Act claims . . . The Sixth Circuit has yet to decide this question."); *Elcometer, Inc. v. TQC-USA, Inc.*, No. 12-cv-14628, 2013 WL 1433388, at *5 (E.D. Mich. Apr. 9, 2013) ("[Defendant] fails to provide the Court with any controlling authority from this Circuit applying the particularity standards of Rule 9(b) to allegations of false advertising or unfair competition. This is because this is not the law."). Conversely, courts within this Circuit recognize that Rule 9(b) "provides that fraud claims must be pleaded with particularity, but it makes no mention of false advertising claims." *Id.* (citing *Dow Corning Corp. v. Jie Xiao*, No. 11-10008, 2011 WL 2015517, at *9 n.2 (E.D. Mich. May 20, 2011)). The Roof Maxx Litigants fail to identify a Sixth Circuit case requiring a heightened pleading standard for Lanham Act claims. Accordingly, Roof Savers' allegations regarding the Feazels are sufficient to sustain the Lanham Act and ODTPA claims against them. The Court **DENIES** Roof Maxx's motion to dismiss with respect to Counts Five and Six of the Counterclaim and Third-Party Complaint.

## V. CONCLUSION

For the reasons articulated above, the Court **DENIES** Roof Maxx's motion to dismiss with respect to Counts One, Five, and Six. (ECF No. 22). The Court **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss as to Count Two. The Court **DENIES** Roof Maxx's motion to dismiss with respect to Roof Saver's breach of the implied duty of good faith but **GRANTS** the motion to dismiss with respect to Roof Saver's claim alleging a breach of Section 8.11 of the August 2019 Agreement.

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: August 16, 2021**

24